**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| MKB Management Corp, d/b/a Red River Women's Clinic, and Kathryn L. Eggleston, M.D., | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| Birch Burdick, in his official capacity as State Attorney for Cass County; Wayne Stenehjem, in his official capacity as Attorney General for the State of North Dakota; and Larry Johnson, M.D., Robert Tanous, D.O., Kate Larson, P.A.C., Norman Byers, M.D., Cory Miller, M.D., Kayleen Wardner, Gaylord Kavlie, M.D., Kent Martin, M.D., Kent Hoerauf, M.D., Burt Riskedahl, Jonathan Haug, M.D., Genevieve Goven, M.D., and Robert J. Olson, M.D., in their official capacities as members of the North Dakota Board of Medical Examiners, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**ORDER RULING ON SCOPE OF DISCOVERY, DISCOVERY DISPUTES, AND SCHEDULING**

Case No. 1:13-cv-071

_____

## I.  BACKGROUND

Plaintiffs in this case challenge the constitutionality of 2013 N.D. Sess. Laws ch. 119, §§ 1-3, codified at N.D.C.C. §§ 14-02.1-05.1, 14-02.1-05.2, & 43-17-31(29), that bans abortions if a fetal heartbeat can be detected, except in cases of medical emergency, by making the performance of such an abortion a criminal act and grounds for disciplinary action against the doctor performing it ("fetal heartbeat law"). On July 22, 2013, District Judge Hovland granted a temporary injunction enjoining

1

its enforcement. MKB Management Corp. v. Burdick, No. 1:13-CV-071, 2013 WL 3779740 (D.N.D. July 22, 2013) ("MKB Management"). The temporary injunction currently remains in place.

On August 26, 2013, Judge Hovland conducted a telephonic status conference and the next day entered the following order setting deadlines for the filing of dispositive motions and allowing limited discovery:

1) The parties shall have until October 15, 2013, to file dispositive motions

2) The parties shall have until December 15, 2013, to file responses to the dispositive motions

3) The parties shall have until January 15, 2014, to file any reply briefs

4) The parties are allowed to serve discovery requests (interrogatories, requests for admission, etc.) during the above time frame

5) Depositions shall be completed on or before December 15, 2013, and no more than three (3) depositions shall be allowed during this time frame.

Before the court are disputes between plaintiffs and defendants (collectively the "State") over: (1) the scope of discovery; (2) particular discovery requests; and (3) schedule matters. The court held a telephonic hearing on the disputes on November 12, 2013. During the hearing, the court made on-the-record rulings with respect to the scope of discovery and the discovery requests in dispute. What follows is the court's written order summarizing the court's rulings.

## II. DISCOVERY DISPUTES

### A. Scope of discovery

The court's rulings restricting the scope of discovery pending resolution of an early dispositive motion are reflective of the fact that, for all practical purposes, this case has been decided

unless the State is able to demonstrate that viability begins on or before the time when a fetal heartbeat can be detected. This appears to be unlikely.

In the court's order granting the preliminary injunction, Judge Hovland made clear that this court is bound by prior United States Supreme Court precedent governing when a woman has the right to choose to have an abortion, including at what point the State cannot prohibit the exercise of that right. In summarizing that law, he observed:

> A woman's constitutional right to terminate a pregnancy before viability has consistently been upheld by the United States Supreme Court in the forty years since Roe v. Wade. See e.g., City of Akron v. Akron Ctr. for Reprod. Health, Inc., 462 U.S. 416, 420, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) (a woman has a constitutional right to terminate her pregnancy) (overruled on other grounds); Casey, 505 U.S. at 846, 112 S.Ct. 2791 (a woman has a right to an abortion before viability without undue interference from the state); Stenberg, 530 U.S. at 921, 120 S.Ct. 2597 (a woman has the right to choose an abortion before viability); Gonzales, 550 U.S. 124, 127 S.Ct. 1610 (the state may not prevent "any woman from making the ultimate decision to terminate her pregnancy").
>
> The right to terminate a pregnancy is not absolute, and must be balanced with the state's interest in protecting the woman's health and the potential life of the fetus. Roe, 410 U.S. at 162, 93 S.Ct. 705. After the fetus becomes viable, a state's interest in protecting its potential life becomes compelling enough in certain circumstances to outweigh the woman's right to seek an abortion. See Casey, 505 U.S. at 845–46, 112 S.Ct. 2791. However, it is clear that before viability, "the State's interests are not strong enough to support a prohibition of abortion or the imposition of a substantial obstacle to the woman's effective right to elect the procedure." Id. The state can impose regulations aimed at ensuring a thoughtful and informed choice, but only if such regulations do not unduly burden the right to choose. Id. at 872, 112 S.Ct. 2791. *The Supreme Court's central holding in Roe and Casey is that viability marks the earliest point at which a state's interest in fetal life may be adequate to justify a ban on non-therapeutic abortions. Thus, it is well-established in United States Supreme Court precedent that before viability a woman has a right to choose to terminate her pregnancy.*

MKB Management, at *7 (italics added).

Judge Hovland next considered the medical evidence proffered by plaintiffs that (1) viability generally occurs 23 or 24 weeks after commencement of the pregnancy (which is reflective of

3

conclusions reached in other recent cases and is somewhat less than the time period discussed in Roe given advances in medical care), and (2) that a fetal heartbeat can be detected beginning in about the sixth week of pregnancy. Id. at \*\*6, 8-10. He then concluded, based on the proffered medical evidence as to when the fetal heartbeat can be detected relative to when viability occurs (medical evidence which was not contested by the State at that point), that the prohibition enacted by the fetal heartbeat law is directly contrary to the prior Supreme Court cases prohibiting states from imposing bans on abortion before viability, and that this court is bound to follow that precedent. Id. at \*10. Judge Hovland concluded his discussion stating:

> A woman's constitutional right to terminate a pregnancy before viability has been recognized by the United States Supreme Court for forty years. The undersigned is bound to follow that precedent and uphold the law. Because the United States Supreme Court has clearly determined the dispositive issue presented in this dispute, this Court is not free to impose its own view of the law. The State of North Dakota has presented no evidence to justify the passage of this troubling law. The State has extended an invitation to an expensive court battle over a law restricting abortions that is a blatant violation of the constitutional guarantees afforded to all women. The United States Supreme Court has unequivocally said that no state may deprive a woman of the choice to terminate her pregnancy at a point prior to viability. North Dakota House Bill 1456 is clearly unconstitutional under an unbroken stream of United States Supreme Court authority.

Id. at \*13.

The State contends that it should be permitted expansive discovery even though there is little, if anything, that remains to be resolved unless the State can demonstrate that viability occurs at or before the time that a fetal heartbeat can be detected, which appears improbable. One argument made by the State is that certain language in the Supreme Court's opinion in Gonzales v. Carhart, 550 U.S. 124 (2007) suggests that the Supreme Court has already abandoned its holdings in Roe and Casey that a state may not prohibit a woman from exercising her right to choose prior to viability and

4

that a state can impose restrictions that amount to a prohibition if a state can demonstrate a substantial state or public interest in protecting the fetus and the health of the mother. The problem with this argument is that Judge Hovland has already considered the State's argument that Gonzales altered the landscape in terms of the holdings in Roe and Casey that a woman has the right to choose to have an abortion up to the point of viability and rejected that argument. MKB, at *4.

The State's next argument is that a substantial part of its defense of the fetal heartbeat law will be a challenge to the essential holdings in Roe and Casey that a state may not prohibit a woman from exercising her right to choose prior to viability and that it is entitled to expansive discovery in order to create a record to support the challenge. And here, Judge Hovland has clearly stated that this court is bound by what the Supreme Court has decided in Roe and Casey.

Notwithstanding what Judge Hovland has decided, the State contends it is entitled to expansive discovery to help create a record that will demonstrate its substantial interests in restricting the performance of abortions prior to viability, if not in hope that it will persuade Judge Hovland to change his mind when he rules on dispositive motions, then for the purpose of creating a record for appeal. The court concludes that the State should not be permitted the expansive discovery it seeks - at least not at this time - for the following reasons:

- First, given the nature of plaintiffs' challenge to the fetal heartbeat law and what remains to be decided, the State does not have an absolute right to this discovery under the federal rules of procedure or otherwise. See, e.g., Allno Enterprises, Inc. v. Baltimore County, MD, 10 Fed.Appx. 197, 203–04 (4th Cir. 2001) (unpublished per curiam); Act Now to Stop War and End Racism Coalition v. District of Columbia, 286 F.R.D. 117, 131 & n.7 (D.D.C. 2012); Shelby County, Ala. v. Holder,

270 F.R.D. 16, 19-20 (D.D.C. 2010); National Paint & Coatings Ass'n v. City of Chicago, 147 F.R.D. 184, 185 (N.D. Ill. 1993); cf. Shelby County, Ala. v. Holder, __ U.S. __, 133 S.Ct. 2612 (2013) (reaching the constitutional issue and abrogating provisions of the Voting Rights Act despite the lower court's restrictions on discovery); Davis v. Federal Election Com'n, 554 U.S. 724 (2008) (reaching the constitutional issue and declaring the "Millionaire's Amendment" to the Bipartisan Campaign Reform Act to be unconstitutional despite the lower court's rejection of FEC's contention that it needed substantial discovery).

To the contrary, Fed. R. Civ. P. 26(b)(1) limits discovery to that which is relevant or is likely to lead to the discovery of admissible evidence.[1] In addition, a court may further limit the discovery of arguably relevant evidence under Rule 26(b)(2)(C)(i)&(iii) when, among other things, the information can be obtained from other sources that are less burdensome or less expensive or when "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." E.g., Steede v. General Motors, LLC, No. 11–2351, 2013 WL 142484, at *7 (W.D. Tenn. Jan. 11, 2013); Andrades v. Holder, 286 F.R.D. 64, 66 (D.D.C. 2012). Further, Fed. R. Civ. P. 16 vests the court with substantial discretion over the

---

[1] The State contends that a number of its discovery requests are relevant to matters alleged in the plaintiffs' complaint. To the extent that may be true, the legal determinations made by Judge Hovland have narrowed the issues for the court's consideration. Further, a number of the allegations in plaintiffs' complaint were directed toward establishing a basis for preliminary relief and are not necessarily relevant when considering the merits.

management of the case before it, including the power to sequence the resolution of the issues that need to be decided and the timing of the discovery related to those issues. See, e.g., Pacific Indem. Co. v. Broward County, 465 F.2d 99, 103 (5th Cir. 1972).[2]

- Second, given the clearly established Supreme Court precedent extending back for forty years, plaintiffs should not be required to incur the substantial costs and other burdens of the expansive discovery the State requests based upon the mere hope that it can later convince the Eighth Circuit Court of Appeals, or perhaps, the United States Supreme Court that either Judge Hovland is wrong as a matter of law or that Roe and Casey should be abrogated.

- Third, the State's discovery requests are highly invasive of plaintiffs' patients' rights to the confidentiality of their medical records.

- Fourth, the State has other sources it can turn to for the information it claims it needs to support its Gonzales argument and its challenge to Roe and Casey. Given the arguments that it wants to make and what is at issue, the State can rely upon any determinations made by the North Dakota Legislature as reflected in the statute or its legislative history. The State can retain its own experts and present their affidavit testimony, including attaching any studies or treatises that they may rely upon. The State can present affidavits from cooperating lay persons to demonstrate what it claims are the negative impacts on a woman's health who have abortions rather than

---

[2] In several recent cases, this court has directed the sequence in which issues would be resolved and limited discovery accordingly. E.g., Star Ins. Co. v. Continental Resources, Inc., No. 4:12–cv–121, 2013 WL 1702653 (D.N.D. Apr. 19, 2013); Pieloor v. Gate City Bank, No. 1:12–cv–039, 2012 WL 4894683 (D.N.D. Oct. 15, 2012).

7

"root around" in plaintiffs' patients' records hoping to find such information. The State can proffer records of statistical information gathered by the state agencies that have regulatory authority in this area. The State can also point to "legislative facts" of the type that reviewing courts often rely upon in considering whether constitutional precedents like <u>Roe</u> and <u>Casey</u> should be overturned, even when not developed in the record. <u>See</u>, <u>e.g.</u>, <u>Issacson v. Horne</u>, 716 F.3d 1213, 1220 n.7 (9th Cir. 2013) (discussing the use by the courts of "legislative facts"). In fact, the State has already gathered substantial information using these other available sources and has presented it to the court in opposition to plaintiffs' motion for a temporary injunction.

- Fifth, because of the substantial burdens that the State's requested discovery imposes on plaintiffs and the degree to which it invades upon plaintiffs' patients' rights to the confidentiality of their medical records, this court is likely to be burdened with having to resolve a number of difficult disputes over the particulars of the discovery.

- Finally, if for some reason this court denies an early motion for summary judgment, the court can revisit the issue of what discovery should be allowed going forward. Further, the same holds true if this court proceeds to permanently enjoin enforcement of the fetal heartbeat law, the court is reversed on appeal, and the case comes back on remand.

Based on the foregoing, the court concludes that the discovery in this case should generally be limited to the questions of when viability occurs, when a fetal heartbeat can be detected, and the relationship between the two - at least pending resolution of an early dispositive motion as

contemplated by Judge Hovland's earlier order. In addition, although it appears plaintiffs' standing is well-established, some discovery regarding that issue may be undertaken if the State is going to contest it. Finally, some limited information may be sought for purposes of background and context as well as information that, within reason, may bear upon the credibility of those persons who may be presenting evidence with respect to the limited issues identified above.[3]

### B. Scheduled depositions

Plaintiffs have expressed concerns about the upcoming depositions and whether the attorneys for the State will proceed on a course reflective of the breadth of the written discovery that has been propounded to date. The court, however, believes that the attorneys for the State understand the scope of the court's rulings and will attempt in good faith to abide by them. Consequently, the court declines the request to sit in and monitor the depositions. However, if issues arise and the parties in good faith cannot resolve them, the parties can call the undersigned or make their record and submit the deposition transcripts to the court for resolution of any disputes.

The attorneys for the State have expressed concern about whether they need to ask certain questions and receive an objection in order to make a record. While the attorneys for the State will have to make their own judgment, the court questions the necessity of their having to do that given the court's ruling regarding the scope of discovery during the hearing and in this written order and what the court understands to be the State's objections to it as expressed during the hearing. Further, as the court has indicated, more expansive discovery may be permitted if circumstances change, *e.g.*, the court denies an early dispositive motion or the case comes back following an appeal, and this

---

[3] It appears plaintiffs have already provided the State with most of this information but limited questioning on these matters may be undertaken during the scheduled depositions.

broader discovery could very well include supplemental depositions of those who are now scheduled to be deposed.

  **C. Court's rulings on the written discovery that has been propounded**

During the November 12 hearing, the court made on-the-record rulings with respect to the following discovery requests and ordered either that plaintiffs did not have to respond to the requests or that further responses were not necessary:

1. Defendants' requests for admissions (second set) numbers 1-4, 10, 12, 14-16, 18, & 20.

2. Defendants' requests for production of documents (second set) numbers 2-5, & 9-10.

Generally speaking, most of the requests went beyond the limited discovery that the court determined was appropriate. In addition, most of the discovery requests were deficient for other reasons as well. Some were irrelevant even when measured by the State's arguments for why it needed the information. Some were vague or argumentative. Many were overly broad, unduly burdensome in terms of the amount of time and costs required for a response, and/or unduly intrusive upon the rights of plaintiffs, their employees, and their patients - particularly when balanced against the State's ability to gather the information from other sources, including, for some of the information requested, the State regulatory authorities that already compile it. In fact, a number of the discovery requests suffered from multiple other deficiencies.[4]

---

[4] Examples of some the requests that the court found objectionable on several grounds include:

REQUEST FOR ADMISSION NO. 2: Admit that an unborn child is a human being or person which has life, and even prior to the process of birth can experience death.

REQUEST FOR ADMISSION NO. 4: Admit that when a physician is treating a pregnant woman, that both the pregnant woman and the unborn child are the physician's patients.

(continued...)

**III. SCHEDULE**

Defendants express some concern about the schedule established by Judge Hovland prior to the court ruling on the discovery disputes. However, at the conclusion of the hearing and after the court had made its rulings, both parties concluded that, at least for the present, they wanted to continue with the same schedule. If that changes, the parties should try to stipulate to what they believe would be reasonable in terms of any proposed changes. That being said, the court most likely is prepared to be flexible if some additional time is later required.

**IV. ORDER**

Until the court rules on an early dispositive motion within the framework established by Judge Hovland, the scope of the permitted discovery shall be in accordance with this order. The particular discovery requests by the State as discussed earlier are **DENIED** for the reasons expressed by the court on the record during the hearing on November 12, 2013, and as further stated in this written order.

**IT IS SO ORDERED.**

Dated this 15th day of November, 2013.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court

---

[4](...continued)

REQUEST FOR PRODUCTION OF DOCUMENTS NO. 9: Identify and produce all documents relating to abortions performed by you from and after January 1, 2003 to the present date.